NIMZ, Respondent, vs. FULLERTON LUMBER COMPANY, Appellant.

*February 8—March 7, 1933.*

The cause was submitted for the appellant on the brief of *Bird, Smith, Okoneski & Puchner* of Wausau, and for the respondent on that of *Stone & Park* of Wausau.

NELSON, J.    The plaintiff is the widow of one H. W. Nimz who committed suicide at Paynesville, Minnesota, on November 12, 1931.    At the time of his death he was in the employ of the defendant.    The defendant, a South Dakota corporation having its home office and principal place of business in the city of Minneapolis, was engaged in the business of selling lumber and building supplies.    It owned a number of branch yards, one of which was located at

Paynesville. That yard, prior to his death, was under the charge and management of Mr. Nimz. On November 11, Mr. English, defendant's superintendent, went to Paynesville for the purpose of making a check-up of that yard. He had with him a list of verification slips relating to customers' accounts. He started to go over the books with Mr. Nimz for the purpose of checking the accounts before sending out the verification slips. Mr. English found that some of the accounts, and at least two reports, were not brought down to date. He informed Mr. Nimz that he would want to balance the cash and everything else and that he would come back the next day and do that work. Mr. Nimz had mentioned that he was having company for dinner that night. This was evidently advanced as an excuse for not continuing with the check-up that evening. Mr. English said to go ahead as he had to go back to Minneapolis that night anyway and would be back the next morning and finish the check-up. The next morning Nimz committed suicide. At the time of his death Mr. Nimz was covered by a group policy carried by the defendant on its employees. Under the terms of that policy and a certificate issued to Mr. Nimz, the plaintiff, as beneficiary, became entitled to the sum of $2,000 upon the death of her husband. Several days after the death of Mr. Nimz a number of shortages in his accounts were discovered. At the time of the trial the asserted shortage amounted to $878.86. On November 27th a check for $2,000, payable to the plaintiff, had been sent or delivered to the defendant by the insurance company. The plaintiff was called down to defendant's office where she indorsed the insurance company's check. She and Mr. English then went to the local bank to have the check cashed. The banker stated that it would be impossible to cash the check as it would have to go through for collection. The plaintiff was in urgent need of funds. The banker suggested that the defendant give its check to her for $1,000, deposit the insurance company check to its account and also

give the bank its check for $1,000 to cover the insurance company check deposited to its account, pending its collection. A check for $1,000 was issued by the defendant to the plaintiff, who presented it to the bank. It was paid by cash in the amount of $250 and a draft for $750. The insurance company check was paid and the defendant credited with the amount thereof. On November 27th, when the plaintiff received defendant's check for $1,000, or at least during the time that she was in the company of Mr. English and attending to the business hereinbefore mentioned, Mr. English presented to her the following instrument:

FULLERTON LUMBER COMPANY.
Paynesville, Minn.                                    11/27/1931.
    Received from Mrs. Martha Elizabeth Nimz $1,000.00. One Thousand Dollars for To apply on account of H. W. Nimz.
FULLERTON LUMBER COMPANY,
per I. H. English, Supt.

which she retained in her possession without objection or protest until December 16th following. It is around that instrument that this controversy chiefly centers. The plaintiff contends that the instrument is a mere receipt for money, is open to explanation, and may be varied or contradicted by parol. The defendant contends that the instrument is more than a receipt and contains the elements of a contract, which, under the parol-evidence rule, cannot be varied, explained, or contradicted by parol evidence although it may be set aside and avoided for fraud or mistake.

It is of course elementary that mere receipts may be explained, varied, or contradicted by parol. It is also well established that when an instrument in the form of a receipt includes the elements of a contract, the contractual provision is governed by the same rules as are applicable to other contracts and cannot be varied, explained, or contradicted by parol evidence. *Twohy Mercantile Co. v. Estate of McDonald,* 108 Wis. 21, 23, 83 N. W. 1107; *Conant v.*

*Estate of Kimball,* 95 Wis. 550, 70 N. W. 74; 4 Page, Contracts, § 2156. The trial court was of the opinion that the instrument was a mere receipt which was subject to explanation, and therefore received evidence relating to the giving of the instrument and to the conversations had at the time. The court submitted the case to the jury on the theory that the instrument was a mere receipt and contained no elements of a contract. The jury found in answer to the question submitted that on November 27, 1931, when the draft for payment to the plaintiff of insurance on the life of her husband was received by her at the defendant's office at Paynesville, she did not make an agreement with the defendant to leave in defendant's possession a thousand dollars to be used in paying up liabilities of plaintiff's husband to the defendant when discovered. If the trial court was right in holding that the instrument was a receipt, then it must be held that the verdict of the jury settled this controversy, for the verdict rendered is amply supported by the evidence although there exists in the record an irreconcilable conflict between the testimony of the plaintiff and the defendant. Mr. English testified that on the day of the suicide and also on November 27th, when the instrument was delivered to the plaintiff, she wanted to protect Mr. Nimz's name and agreed that the shortage was to be taken out of the $1,000 retained by it. The plaintiff, on the other hand, denied any such agreement. No useful purpose would be served by reciting at length the evidence bearing upon that issue.

As before stated, it is elementary that a mere receipt for money is subject to explanation, and it is well settled that receipts containing elements of a contract or contractual provisions are, so far as such elements or provisions are concerned, subject to the parol-evidence rule applicable to contracts. The only difficulty we have is in determining whether this instrument, in form a receipt, is merely a receipt or contractual in nature. In *Conant v. Estate of*

*Kimball, supra,* an instrument containing the following language: "Received of C. F. Kimball, ten dollars in full of all demand to date," was held to include the elements of a contract, was governed by the rules applicable to contracts, and could not be varied, explained, or contradicted by parol evidence. However, according to the great preponderance of authority the mere fact that a writing expresses on its face that it is "in full" of all demands, or certain demands, does not make the instrument of such a contractual nature as to preclude the admission of parol evidence to vary its effect. 22 Corp. Jur. p. 1140, § 1525. The *Conant Case* is there cited as authority representing the minority view. In *Seeger v. Manitowoc Steam Boiler Works,* 120 Wis. 11, 97 N. W. 485, it was held that the following written memorandum: "Dec. 16, 1895. Received $200.00 from Seeger Bros. to balance boiler account in full," was held to be a receipt. It was there said:

"The contention that the written receipt on its face imports more than a mere receipt seems not well founded. The language, 'to balance boiler account in full,' in its natural and ordinary significance, when applied to the transaction it covers, means what is usually understood in affairs of a commercial nature by 'received payment in full.' Such a receipt imports no more than that the amount of money specified was in fact received. When language in a receipt of this nature is applied to transactions between parties, which, under the circumstances, covers some agreement in addition to the written admission that money was in fact paid, then the receipt may present elements of a contract, and would then come within the rule that a written contract cannot be varied, contradicted, or modified by parol evidence. But no such situation is presented in this case."

A careful consideration of numerous cases from other jurisdictions throws little light on the question. No case has been cited, and we have found none, holding that the words "to apply on the account of ——," added to the ordinary language of a receipt, makes such a document contractual. In *National Trust & Credit Co. v. Polk,* 123 Ark.

24, 183 S. W. 195, it was held that an instrument containing the following language: "Received," etc., "in full payment of my interest in the J. M. Hawks stock of merchandise," followed by this language: "The above payment has been applied as follows" (stating the application), was a mere receipt.

The following language, found in *Donovan v. Hallowell,* 140 Wash. 312, 313, 248 Pac. 412, seems to us to be an apt expression of what a court should consider in determining whether an instrument in the form of a receipt is a mere receipt or a contract:

"From an examination it would appear that, if the release is such as to appear upon examination to be a mere receipt for money, such as are regularly issued by the thousands in everyday commercial life, the courts generally have ruled that parol evidence is admissible to vary the terms. This, presumably, upon the theory that the instrument shows that it is not the result of any negotiations between the parties and is issued merely as evidence of payment of a sum of money. But, if the document be drawn with such care and precision that it shows by its terms that it represents an agreement between the parties and defines their contractual relations with reference thereto, it will be construed as a contract, and parol evidence held inadmissible."

The dividing line between receipts and written contracts is, to say the least, hazy and the law applicable thereto is not clearly established. As was said in *Jackson v. Ely,* 57 Ohio St. 450, 49 N. E. 792:

"The line that divides receipts open to parol explanation from written contracts to which nothing can be added to or taken from by parol evidence, has not been satisfactorily established, and cases can be found which it is extremely difficult, if not impossible, to reconcile."

The instrument herein, viewed in the light of the rule laid down in *Donovan v. Hallowell, supra,* is in our opinion so informal, incomplete, and lacking in language expressing or attempting to express any contract, promise, or agree-

ment, that it should be held to be a mere receipt rather than a contract. Our opinion is in accord with that of the trial court. The case having been properly submitted to the jury on the theory that the instrument was a receipt and the jury having determined the disputed issue in favor of the plaintiff, the judgment, in our opinion, should be affirmed.

*By the Court.*—Judgment affirmed.